Crew, J.
In the present case, aside from the averment in the petition (unsupported by any evidence) that the Pennsylvania Company by its authorized agent expressly promised to pay the claim here in suit, there is in this case neither allegation nor proof of any liability on the part of said company to compensate R. Mehaffey for the hay, corn, straw and feed furnished by him to Overstreet & Styles, except such as can be predicated upon, or results from, the posting by the Pennsylvania Company at the village of Lafayette in Allen county, Ohio, and at other places within said county, of the following telegram or notice, to-wit:'
“Pennsylvania Lines West of Pittsburg.
“Date, 3-23, 1900. Fort Wayne. Time, 5:20 P. M.
“To Agent Pennsylvania Company:
“Dear Sir — Post notice that Pennsylvania Company will protect all claims for material, labor and board.
“F. A. Zollars.”
The language of this telegram, when construed most favorably for the plaintiff below, Mehaffey, in terms imposes upon the Pennsylvania Company no obligation or duty other than that of protecting and paying all such claims as properly belong to and fall within one or the other of the classes therein designated, namely: claims for material, labor or board. That the claim in suit in this case *442 was not one for labor or board is conceded. But it is insisted that within the terms of the above telegram, and within the meaning of the statutes hereinafter referred to, the hay, corn, straw and feed furnished by Mehaffey to Overstreet & Styles were materials; and that Mehaffey’s claim for the articles so furnished became, and was therefore, one of the claims which the Pennsylvania Company in said telegram expressly assumed to protect and pay. Directly the contrary view is urged by counsel for the railroad company, who contend that the word “material” as used in the telegram, and as employed in the statutes in connection with the construction of railroads, has, and had at the time said telegram was sent and posted, a fixed, well-defined and commonly understood meaning, which was and is, that the word or term when thus used is descriptive of and includes such articles only as are furnished for, and are to be used in, the construction of the road, and that it does not comprehend or embrace articles furnished or supplied for any other purpose; such as feed furnished for teams working upon the railroad, or merchandise, clothing or board furnished the. laborers employed thereon. On the trial of this cause in the court of common pleas, counsel for the Pennsylvania Company requested the.court to give to the jury the following instruction: “No. 1. Gentlemen of the Jury: I charge you, as a matter of law, that the hay, corn, feed, straw and rent set up in the itemized account of plaintiff, is not covered or included in the words 'labor, material and board/ set out in the telegram which is introduced as evidence in this case.” This instruction the court refused to give, and in the general charge *443 instructed the jury as follows: “Now, gentlemen, * * * I might say, before closing, that if you find this telegram was posted by the authority of the company, and if you find that the plaintiff in this case furnished hay, grain, straw and other feed and materials of that character to the contractor or sub-contractor for the use of his horses upon the work, that the plaintiff would be considered as having furnished material, within the meaning of the terms of this telegram, and he would be entitled to recover.” The refusal of the court to cliarge as requested, and the giving by the court of the above instruction, are among the errors here assigned. A determination of whether or not the action of the court in this behalf was erroneous necessarily involves a consideration of the purpose and provisions of Sections 3207, 3208, 3209, 3210 and 3211, Revised Statutes. Section 3207 provides what contracts for railroad work shall stipulate, and makes the contractor liable to persons performing labor or furnishing materials stipulated for in the contract with the owner of .the road. But it makes no provision for a lien upon the road, nor does it impose any liability on the railroad company for the labor so performed or the materials so furnished. Section 3208 provides : “A person who performs labor or furnishes materials for or in construction of any railroad, depot buildings, water tanks, or any part thereof, and a person who furnishes boarding on the order of any contractor or sub-contractor, to persons employed by them or either of them, in furnishing materials or performing labor for or in construction of such railroad, depot buildings, water tanks, or any part thereof, in addition to his rights under *444 the preceding section shall have a lien for the payment of the same upon such railroad, and such lien shall have and maintain precedence over any lien taken, or to be taken, and shall subsist for one year from the date of filing the attested account hereafter provided for; and if an action is brought to enforce the lien within that time, it shall continue in force until finally adjudicated.” It further provides and points out what shall be done in order to perfect such lien. Sections 3209 and 3210 provide how actions may be brought for the enforcement of liens, provide for notice to the contractor or sub-contractor, and the adjustment of disputed claims, and are merely sections governing procedure. Section 3211 provides as follows: “The provisions of the four preceding sections shall apply to and include any person who furnishes grain, hay, merchandise,. tools or implements, or who repairs any tools or implements, on the order of any contractor or sub-contractor, for their own use, or the use of persons employed by them of either of them, while furnishing materials or labor for or in construction of such railroad; provided, that the amount of such claim shall not exceed the wages of the person performing labor or. furnishing materials, to whom furnished, or the amount found due such contractor or sub-contractor, under the provisions of section thirty-two hundred and seven; and in every such case, the' requirements of section thirty-two hundred and■ eight, as to filing affidavits and giving notices, shall be strictly complied with; and, provided further, that the aggregate of all liens taken and perfected under sections thirty-two hundred and seven, thirty-two hundred and eight, thirty-two *445 hundred and tenand thirty-two hundred and eleven, shall not be in excess of the actual construction contract price of the railroad company. The word ‘owner’ in these sections shall be held and considered as including any lessee, receiver, corporation, company, or persons owning, operating or managing any railroad, with whom or in whose behalf the contracts herein have been made.” While this section in terms extends the provisions of the four preceding sections to such persons as furnish grain, hay, merchandise, etc., on the order of a contractor or sub-contractor for their use or the use of persons employed by them or either of them while furnishing material or labor for or in the construction • of such railroad, it does not enlarge or extend the meaning of the word material as employed and used in the preceding sections, nor does it impose upon the railroad company any personal liability for the claims of persons furnishing the articles therein méntioned, unless a lien be taken therefor agreeably to its provisions. The sole purpose and effect of this enactment, apart from declaring the meaning of the word “owner,” is to provide for the giving of a lien upon the railroad, to the limited extent therein provided, to persons furnishing on the order of a contractor or sub-contractor as aforesaid, any of the articles in said section enumerated, the furnishing of which, but for this statute, would not entitle the person so supplying the same to have or take a lien therefor. The statute is itself, therefore, a legislative declaration that hay, grain, merchandise, tools, etc., are not materials, and that they are not within the intent and meaning of that term as employed and used in the pre *446 ceding sections. All of the afore-mentioned sections are parts of an act passed by the legislature April 6, 1883 (80 O. L., 99). On April 10, 1884 (81 O. L., 126), the legislature passed an act declaratory of the true intent and meaning of the aforesaid sections, which act reads as follows: “The true intent and meaning of sections thirty-two húndred and seven, thirty-two hundred and eight, thirty-two hundred and nine, thirty-two hundred and ten and thirty-two hundred and eleven of the revised statutes of Ohio, as amended April 6, 1883, is hereby declared to be as follows: Any person or persons who perform labor or furnish material or boarding, under contract, express or implied, with such railroad company, or any of its authorized agents, for the construction of such railroad, or any part thereof, is entitled to a lien for the payment of the same upon such railroad, as provided in section thirty-one hundred ¿nd eight of the above recited act.” In the case of Industrial & Mining Guaranty Co. v. Electrical Supply Co. et al., 58 Fed. Rep., 732, Swan, Judge, reviewing and construing the above enactment, and also Section 3208, Revised Statutes, says: “By Section 3208 of the Revised Statutes of Ohio it is provided that ‘a person who performs labor or furnishes material for or in the construction of any railroad, depot buildings, water tanks, or any part thereof, to a contractor or sub-contractor, * * * shall have a lien for the payment of the same upon such railroad.’ * * * This statute gives a lien upon the railroad only for materials furnished a contractor or subcontractor, for or in the construction of such railroad, depot buildings, and water tanks, or any *447 part thereof. For whatever other structures materials may be furnished, no lien is given under this act.
“The act of April 10, 1884, declaratory of the meaning of Section 3208, above cited, enlarges the list of those entitled to a lien, by enacting that the true intent and meaning of those sections is that ‘any persons who perform labor or furnish material or boarding under contract, express or implied, with such railroad company, or any of its authorized agents, for the construction of such railroad, or any part thereof, is entitled to a lien for the payment of the same upon such railroad, as provided in Section 3108 (?) [3208] of the above recited act/ The only effect and purpose of this latter act was to give a lien under Section-3208 as well to persons furnishing materials directly to or performing labor under contract with a railroad company, as to those who dealt with contractors and sub-contractors, who were protected by Section 3208. Neither act, however, purports to give a lien-upon a railroad for anything not used in its construction as a railroad or that of its depot buildings or water tanks.” That the general rule of construction is, that statutes giving a lien upon the railroad for materials furnished, should be limited to materials that are furnished for and to be used in the construction of the road, so as in a sense to become a part of it, would seem to be well settled by a uniform line of decisions, of which we cite the following as a type:
Central Trust Co. v. Texas & St. Louis Ry. Co., 27 Fed. Rep., 178; Dudley v. Toledo, Ann Arbor & Northern Michigan R. R. Co., 30 Am. & Eng. R. R. Cases, 236; Stewart Chute Lumber Co. v. *448 Missouri Pacific Railroad Co. et al., 33 Neb., 29; Basshor & Co. v. Balto. & Ohio Railroad Co., 65 Md., 99; Ferguson et al. v. Despo et al., 8 Ind. App., 523; Knapp et al. v. St. Louis, Kansas City & Northern Ry. Co., 6 Mo. App., 205. Having regard, then, for the well-defined. and established meaning of the term as employed in the statutes, it must be held that the hay, grain, straw and feed furnished by Mehaffey to Overstreet & Styles, were not materials either within the meaning of the statute or the intent and language .of the telegram posted by the Pennsylvania Company, upon which this suit was predicated. And if not materials, then Mehaffey’s claim for the articles so furnished was not within the terms of the telegram, and the sending and posting of said telegram — there being no allegation of fraud or attempt to mislead thereby — created no obligation against, neither did it impose any liability upon, the Pennsylvania Company to protect or pay Mehaffey’s claim, or any claims of like character. Whether then Mehaffey, as averred in his petition, because of his reliance upon said telegram, did not, until the bringing of the present suit, institute any legal proceedings to secure the payment of his claim, and forbore the filing of an affidavit with the recorder of Allen county to perfect his lien against the railroad company for the articles furnished and supplied by him to Overstreet & Styles, becomes wholly immaterial, for the reason that such facts, if proven in the present case, would in no wise either change or enlarge his rights against the railroad company. There being then in this case no liability on the part of the Pennsylvania Company to Mehaffey, except such as can right *449 fully be predicated upon the sending and posting of the above mentioned telegram, and Mehaffey’s claim not being covered by, or within the terms of, said telegram, it follows that he is without right to recover in this case, and the trial court should have sustained the motion of counsel for the Pennsylvania Company — made at the close of the evidence — and should have directed a verdict in favor of the defendant company. Not having done this, but having overruled said motion and submitted the case to the jury, the court should then have given to the jury above request No. 1, as asked by counsel for the Pennsylvania Company.
Upon an application for a rehearing in this case, it is stated by counsel for defendants in error that certain of the items of Mehaffey’s claim referred to in “Exhibit A” attached to his petition, amounting to $21.1-0, are labor claims, and therefore within the express language and letter of the above telegram. And it is claimed that as to these items at least, Mehaffey is entitled to recover in this case. It is perhaps a sufficient answer to this claim to say, that Mehaffey’s petition in the present case contains no allegation that these claims, or any of them, were labor claims, nor are they so denominated or described in Exhibit A attached to said petition. Mehaffey’s claim as shown by the averments of his petition, and as exhibited by schedule A thereto attached, is one •for hay, grain, straw and feed furnished by him to Overstreet & Styles, or to other persons on their order and for which they were to pay. He does not ask, nor is he entitled in this case, to recover as owner or assignee of an}? claim for labor. There is a further, and we think equally conclu *450 sive, answer to this suggestion of counsel for defendant in error, which is, that where, as in this case, a railroad contractor gives to a laborer in his employ an order upon a third party, by which such laborer obtains from said third party goods or merchandise to the amount of such order, the transaction is one of mere novation, whereby a new debt is created and the original debt, to the extent of the order, cancelled and paid, and it can not in law be treated as an assignment pro tanto of the laborer’s claim to the person furnishing the goods or merchandise upon said order, so as to enable the latter to proceed against the railroad company under the statute as one owning and holding a claim for labor. In view of the conclusions above reached, it is unnecessary to dispose of the other questions argued, and they are not here considered. The judgment of the circuit court is reversed, and judgment will be entered for plaintiff in error upon the undisputed facts.

Reversed and judgment for plaintiff in error.

Shauck, C. J., Summers and Spear, JJ., concur'.